THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM JOHNSON, Defendant-Appellant.

(No. 58748;

First District (3rd Division)—October 17, 1974.

James J. Doherty, Public Defender, of Chicago (Daniel Miranda and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

154

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Thomas A. Mauet, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Along with Robert Douglas (not involved in this appeal), defendant, William Johnson, was charged with two counts of armed robbery. Douglas' motion for a severance was granted. After a bench trial, defendant was found guilty of the crimes charged, and was sentenced to 7 to 15 years, the sentences to run concurrently.

The issues presented are whether defendant's absence from the trial denied him due process; whether the court erred in denying defendant's motion for a substitution of counsel; whether the court properly denied defense counsel's motion to withdraw from the case; whether the court erred in denying defendant's motion for a change of venue; whether the court committed reversible error in proceeding to trial without ruling on a pretrial motion to suppress statements; whether the court erred in the admission of certain evidence; whether the evidence adduced on one of the two counts of armed robbery was sufficient to prove defendant guilty beyond a reasonable doubt; and whether defendant's warrantless arrest was legal.

On the day prior to trial, after the trial court had denied defendant's motion to quash the arrest and during a hearing on defendant's motion to suppress oral statements, defendant requested a continuance to prepare his case with another attorney. He also requested that a bar association attorney be appointed. The trial court denied both requests. The public defender had been appointed at arraignment, and the assigned assistant had actively engaged in pretrial activities. He had filed motions for discovery, to reduce bond, to quash the arrest, and to suppress certain statements.

On trial date defendant filed a *pro se* written petition for an "interlocutory injunction" requesting time to obtain an attorney other than the public defender. The court denied the petition. Defendant then filed a written petition for other counsel. The court rejected the petition as coming too late. Defendant asked if the record would show that the public defender was not representing him. The judge replied that the public defender was his attorney. After defendant waived a jury trial, the public defender objected to proceeding to trial because defendant did not wish to be represented by him, and because the court had reserved its ruling on defendant's motion to suppress the statements. As the trial judge started to explain why he was proceeding to trial without

ruling on the motion, the prosecutor stated that the prosecution would not introduce the statements made by defendant. The court thereupon overruled defense counsel's objection.

After a short recess, defendant made an oral motion for a change of venue, which was denied. Defendant stated that he would not stand trial without an attorney. Defendant refused to sit down unless he had counsel of his own choosing. The trial judge informed the defendant that if he wished to be present he would have to be seated. Defendant stated that he was not waiving his right to be present at trial, but repeated that he would be seated only if he were furnished an attorney of his own choosing. The trial judge then ordered defendant removed and that the trial proceed in his absence. The judge subsequently stated that he had only two options: to exclude defendant or to have him bound and shackled.

However, before the first witness was called, the judge requested that the defendant be returned to the courtroom. The bailiff reported that the defendant did not wish to come back out. The court then informed defendant through his attorney that any time the defendant wished to return to participate in the proceedings and confront the witnesses he should so indicate to the bailiff and he would be returned to the courtroom.

Shortly thereafter, at the request of the court, defense counsel went to the lockup to speak to the defendant. When counsel returned, he informed the court that defendant wished to return to the county jail. The public defender's request to withdraw as defendant's attorney was again denied. The trial court instructed the bailiff to inform the defendant that he would have the opportunity to return to the courtroom whenever he wished. The door to the bullpen was left ajar for his return. The bailiff reported to the judge that, when so informed, defendant said he wanted a bar association attorney.

During the testimony of one of the prosecution witnesses, defendant entered the courtroom. He stated that he needed one of his motions stamped by the clerk. When asked if he wished to remain in the courtroom, defendant responded that he was returning to the bullpen. The trial judge emphasized that defendant was free to return and confront the witnesses. Defendant replied that he was not waiving his right to be present at his trial, but that he did not have an attorney.

At trial, Mrs. Lottie Flanagan testified for the State that she was defendant's aunt. On April 24, 1972, defendant and another man came to her apartment in the city of Chicago. After a short conversation, defendant placed a knife to her throat. Defendant forced her to go upstairs to get her camera, television set, and radio. Defendant and she returned

downstairs, where he compelled her to empty the contents of her purses on a bed. When defendant suddenly started shaking, Mrs. Flanagan ran out to a neighbor's home and called the police. Meanwhile, defendant fled.

Miss Catherine Riddle, an 18-year-old student, testified that on the same afternoon she was seated in her auto in front of her home. She was about to take her 2-year-old sister to the store. The witness lived a few blocks from Mrs. Flanagan. A man suddenly opened the car door on the driver's side and put a knife to her face. His face was very close to her. He said that he needed a car, pushed her over, and started to drive. As he drove off, Miss Riddle screamed and pushed her sister out the door. The assailant grabbed her arm, put the knife to her throat, and demanded her purse. The witness gave the assailant her purse and jumped out of the car. As Miss Riddle's father ran up, the robber drove off. She gave the police an identification a few minutes later.

Miss Riddle identified the robber as having something on his head which was reddish. He was wearing a brightly colored tie-dyed T-shirt, and blue jeans. The whole incident took about 5 minutes. At trial, Miss Riddle testified that she saw the knife when defendant entered the vehicle. She testified at an earlier hearing that at first she did not see the knife.

Three weeks after the occurrence, Miss Riddle viewed seven photographs of seven black men at the police station. She identified defendant from one of the photographs. She again saw defendant a few weeks later at a preliminary hearing. Miss Riddle testified at trial that she did not see the robber in the courtroom, but stated that she had seen him in the courtroom on the previous day. At that time, he wore a red jacket, blue pants, brown shoes, and had a crew haircut and hair around his chin. The trial court ordered that the record show that was the manner defendant was attired on the previous day. The State requested that the record reflect that the witness in fact had identified the defendant. The court indicated that he would so rule. However, when defense counsel objected to such an identification as a conclusion, the trial court requested additional bailiffs to be brought to court preparatory to having defendant brought into open court. The court commented that defendant had caused no commotion, but that it wished the additional personnel to be on the safe side. The judge was then informed that defendant refused to enter the courtroom. The judge, stating that he wished to avoid a carnival or a blood bath by forcibly having defendant brought into the courtroom, held that the identification made by Miss Riddle was adequate. Defense counsel moved for a mistrial on the grounds that the

judge had by his ruling decided one of the ultimate issues of the case. The motion was denied.

At the conclusion of the State's case, defense counsel renewed his motion for a mistrial citing the atmosphere created by the additional security. The trial judge responded by listing his reasons for the additional bailiffs: the defendant's physical size, his earlier refusal to sit down, and his glances to the back door of the courtroom. The judge, however, commented that defendant had always maintained a courteous demeanor and at no time caused a commotion in the court. The judge denied the motion for a mistrial.

After denying the defense motion for a directed finding of not guilty, the court instructed defense counsel to inform the defendant of what had transpired. Defendant again stated that he wished to return to the county jail. When called to present a defense, the assistant public defender stated that the defense neither rested nor did not rest. The court then entered a finding of guilty on both charges.

Along with the prosecutor and defense counsel, the trial judge entered the bullpen adjoining the courtroom to advise defendant that he had been found guilty of two counts of armed robbery. Defendant was advised that he could attend the hearing in aggravation and mitigation in open court, and that his attorney's motion for a new trial and in arrest of judgment had been denied. Defendant stated that he had no attorney, and requested a transcript of the hearing, a stay, appointment of an attorney, and a new trial. Defendant refused further answers to the judge's inquiries, except to say that he would not waive any right "by his failure to attend the hearing."

The trial court declined to forcibly require the defendant's presence at sentencing. At the conclusion of the hearing in aggravation and mitigation in the absence of defendant, the court imposed sentence. The court also instructed the public defender to prepare a notice of appeal and petition for a transcript.

The primary issue presented is whether defendant's absence from the trial denied him due process and a fair trial.

■■ It is fundamental that an accused has the right to appear and defend in person as well as by counsel; that he has the right to confront witnesses against him; and that he is entitled to participate at every stage of the trial. *Snyder v. Massachusetts* (1934), 291 U.S. 97; *Pointer v. Texas* (1965), 380 U.S. 400.

In *Illinois v. Allen* (1970), 397 U.S. 337, the United States Supreme Court considered whether an accused could claim his right to remain in the courtroom at his own trial when he engaged in exceedingly disrup-

tive conduct. Allen had been tried in Illinois for armed robbery. During his trial, he repeatedly disrupted the proceedings with abusive remarks to the court, threatened the judge's life, and stated that under no circumstances would be allow the trial to continue. The judge removed him from the courtroom. Although Allen was later readmitted, the trial had proceeded in his absence.

When the Illinois Supreme Court affirmed his conviction (*People v. Allen* (1967), 37 Ill.2d 167, 226 N.E.2d 1). Allen filed a habeas corpus petition in the Federal district court attacking his conviction on the ground that his exclusion from the courtroom violated his constitutional right to be present. After the district court declined to issue the writ, the court of appeals reversed, holding that a defendant's sixth-amendment right to attend his own trial was so "absolute" that regardless of how unruly his conduct, he could never be held to have waived his right as long as he insisted upon it. (*United States ex rel. Allen v. State of Illinois* (7th Cir. 1969), 413 F.2d 232.) The United States Supreme Court granted certiorari and reversed, holding that a defendant may lose his sixth-amendment right to be present at trial, if after being warned of the consequences of continued disruption, he still insists on conducting himself in so unruly a manner that his trial cannot be conducted.

■■ We agree with defendant that his conduct in the present case would not justify his exclusion from the trial under the *Allen* principle. Defendant's sole disruptive action was his noncompliance with the court's direction to be seated. Indeed, the trial court characterized defendant's demeanor to have been courteous at all times. In our judgment, however, the error in excluding defendant was cured by the trial judge prior to the commencement of trial. We believe that the proper rule should be that, where a defendant voluntarily absents himself from the courtroom after trial has begun, his voluntary absence constitutes a waiver of the right to be present, and the trial court may proceed with the trial as if defendant were present. (See *People v. Davis* (1968), 39 Ill.2d 325, 235 N.E.2d 634.) It is true that the trial court prior to the commencement of trial ordered the defendant removed from the courtroom. However, before trial began, the trial court reconsidered and attempted to have defendant return to the courtroom. Defendant refused. The record demonstrates most vividly that, despite being afforded repeated opportunities, defendant continually refused to return and elected to absent himself from the proceedings. He insisted that he would return only if he were furnished other counsel. Defendant's suggestion, offered without citation of authority, that his erroneous removal from the courtroom could not be cured by subsequent opportunities to return before trial began is untenable.

The fact that defendant at one point during the trial entered the courtroom, but refused to remain, further illustrates that he deliberately and voluntarily absented himself from the proceedings. Nor do we believe that the trial court had a duty by use of physical force to compel defendant's attendance. Although defendant was in custody and not free on bond, his absence, under these circumstances, was voluntary. Since defendant voluntarily absented himself from trial, he cannot now complain that he was deprived of his constitutional right to be present.

Defendant next contends that the trial court erred in denying his motion for a substitution of counsel. On the day prior to trial, after the court had denied defendant's motion to quash the arrest and during a hearing on his motion to suppress certain statements, defendant requested a continuance to have a bar association attorney prepare his case. Defendant's sole complaint against the assistant public defender was that the latter had obtained a severance of defendant's case from that of Douglas. The trial court pointed out that Douglas had a right to a severance and denied the request for a substitution of counsel. On the following day, defendant filed a *pro se* written petition for an "interlocutory injunction" requesting time to obtain other counsel. When the court denied that motion, defendant filed a petition for counsel other than the public defender. The petition was conclusionary in nature, setting forth, among other things, that the assistant public defender was assigned to that courtroom, that he was overworked, and that the public defender, as an employee of the county, was supported by the taxpayers and thus could not fulfill his obligations to defendant. The court denied the petition, and ordered the trial to begin.

■■ An indigent defendant is entitled to counsel other than the public defender only upon a showing of good cause. (Ill. Rev. Stat. 1971, ch. 38, par. 113—3(b); Ill. Rev. Stat. 1971, ch. 34, par. 5604; *People v. Branscomb* (1969), 116 Ill.App.2d 385, 254 N.E.2d 126.) In the absence of a showing of good cause, the trial court is within its discretion in denying a request for an attorney other than the public defender. (*People v. DeMary* (1967), 37 Ill.2d 364, 227 N.E.2d 361.) In the present case, defendant never demonstrated good cause for counsel other than the assistant public defender. Counsel had represented defendant since arraignment, and had vigorously engaged in various pretrial motions and appearances. No suggestion of incompetency on his part has ever been made. The trial court did not abuse its discretion in rejecting defendant's motion for substitution of counsel.

■■ In our judgment, the trial court also properly denied the assistant public defender's motion to withdraw from the case. After the court had denied defendant's motion for a substitution of counsel, the assistant

public defender made a motion to withdraw as counsel on the ground that defendant did not wish to be represented by him. The motion by an attorney for leave to withdraw for any reason is addressed to the sound discretion of the court. The burden, therefore, rests with the moving party to prove to the court's satisfaction the legitimacy of the request, and when the petitioner either fails or refuses to do so, the court may properly deny the motion. (*People v. Wolff* (1960), 19 Ill.2d 318, 167 N.E.2d 197, *cert. denied* (1960), 364 U.S. 874.) If defendant's desire that the public defender not represent him is sufficient to justify a withdrawal by counsel, it would render meaningless the above-cited requirement that a defendant must demonstrate good cause to obtain counsel other than the public defender. Under the facts and circumstances of this case, the court did not abuse its discretion in denying the assistant public defender's motion to withdraw as counsel.

Defendant's next contention is that the trial court erred in denying his motion for a change of venue.

■■ Illinois statute provides that a defendant may move at any time for substitution of judge for cause, supported by affidavit. (Ill. Rev. Stat. 1971, ch. 38, par. 114—5(c).) In the present case, defendant presented an oral motion on trial date, unsupported by affidavit. Moreover, a petition for substitution of judge delayed until after the trial judge has by his rulings passed upon substantive issues, and indicated his views on the merits of the cause, comes too late. (*People v. McDonald* (1962), 26 Ill.2d 325, 186 N.E.2d 303.) The instant oral petition was not filed until after the court had denied defendant's motion to quash the arrest. The court correctly denied defendant's untimely motion for a substitution of judge.

■■ Defendant's claim that the trial court erred in proceeding to trial without ruling on a motion to suppress an oral confession is without merit. When the defense counsel objected to the trial court's reserving a ruling on the motion, the trial judge started to explain his reasons. At that point, the prosecutor interjected that the State would not introduce into evidence any statement made by defendant. The court thereupon overruled defendant's objection. At trial the prosecution made no effort to introduce the confession, and the court's reservation of ruling on the motion could not have been prejudicial to the defendant.

Defendant next urges that the trial court committed reversible error in permitting Mrs. Flanagan, defendant's aunt, to testify, over objection, as to a certain statement made by Douglas to defendant during the robbery: "Get everything together here, take care of the business, I'm going to get a car."

It is not necessary to consider whether the remark was properly ad-

missible, as the State contends, as a statement made between co-conspirators during the commission of a crime. Mrs. Flanagan positively identified defendant, her nephew, as the person who forced her at knife-point upstairs into her bedroom and compelled her to gather various personal property and money. Defendant obviously has not challenged that identification. Any error in the admissibility of the statement of Douglas was harmless.

■■ Defendant's contention that it was error to permit Miss Riddle to give secondary evidence regarding her identification of defendant is also without merit. The reason that Miss Riddle was unable to make an in-court identification of defendant was because defendant voluntarily absented himself from the courtroom. The trial judge was reluctant to compel defendant's attendance because of the possibility of injuries arising out of the compulsion. Under such circumstances, the State was forced to use a secondary means of identification. (See *People v. Falconer* (1969), 116 Ill.App.2d 56, 253 N.E.2d 484.) The identification was properly admitted into evidence.

Defendant further maintains that Miss Riddle's identification was insufficient to prove him guilty of that count of armed robbery.

■■ Positive identification by one witness who has ample opportunity for observation may be sufficient to support a conviction. (*People v. Lamphear* (1955), 6 Ill.2d 346, 128 N.E.2d 892.) The adequacy of the identification raises a question of the credibility of the witnesses, which is a matter for the determination of the trier of fact in light of its superior opportunity not only to hear the testimony of the witnesses but also to observe their demeanor while on the witness stand. *People v. Jackson* (1963), 28 Ill.2d 566, 192 N.E.2d 873.

■■ In the present case, the testimony of Miss Riddle, who had ample opportunity to observe her assailant, was clear and positive. Her opportunity to observe was excellent. She sat in a vehicle next to defendant during daylight for about 5 minutes. She gave the police a reasonably detailed description of her robber, and 3 weeks later identified defendant from one of several photographs shown to her by the police. The only conflict in her testimony, pointed to by defendant, is that at an earlier hearing Miss Riddle stated that she did not see the knife at first, while at trial she testified that she saw the knife immediately. A reviewing court will set aside a conviction only when the testimony is so unsatisfactory as to leave a reasonable doubt as to defendant's guilt. (*People v. Williams* (1972), 52 Ill.2d 455, 288 N.E.2d 406.) In the present case, Miss Riddle's testimony was sufficient to prove defendant guilty of one count of armed robbery. As we have noted, he has not challenged the sufficiency of proof as to the other count.

Under the heading that he was not proved guilty beyond a reasonable doubt, defendant argues that Miss Riddle's identification testimony should have been stricken because the police used "impermissibly suggestive" photographic pretrial procedures.

■■ After defendant was in custody, police went to Miss Riddle's home with seven photographs of seven black men. She was not at home, and the police left a message requesting that she come to the police station to identify photographs. At the station, she selected defendant's picture from the seven photos. No lineup was held. Nothing in the record indicates that the police made any suggestion to Miss Riddle concerning the photographs, or that they informed her that defendant was in custody. We do not view the photographic procedures to have been "impermissibly suggestive." (See *Simmons v. United States* (1968), 390 U.S. 377.) The testimony concerning her photographic identification was properly admitted at trial.

Defendant's final contention is that his warrantless arrest, made about 3 weeks after the crime, was illegal. Section 107—2 of the Code of Criminal Procedures (Ill. Rev. Stat. 1971, ch. 38, par. 107—2) provides in part as follows:

"A peace officer may arrest a person when:

(a) He has a warrant commanding that such person be arrested; or

*   *   *

(c) He has reasonable grounds to believe that the person is committing or has committed an offense."

Defendant argues that since subsection (c) as well as subsection (a) may be applicable to an offense which has been committed, that section (a) controls and requires the police officer to obtain a warrant prior to arresting the accused.

Our Illinois Supreme Court has rejected the contention that a warrantless arrest is permissible only in hot pursuit or during an emergency. (*People v. Johnson* (1970), 45 Ill.2d 283, 259 N.E.2d 57, *cert. denied* (1972), 407 U.S. 914.) In that case, the court held that while it may be desirable to base an arrest on a warrant, an arrest is nevertheless lawful when based upon probable cause. In the present case, the police, at the time they arrested defendant, had probable cause to arrest him.

For the reasons stated, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

McGLOON and MEJDA, JJ., concur.